(264 P.3d 1033)
No. 104,149

STATE OF KANSAS, *Appellee*, v. JOSHUA H. SCHREINER, *Appellant*.

Opinion filed November 4, 2011.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and McANANY, JJ.

ATCHESON, J.: This case requires the court to look at alternative means challenges Defendant Joshua H. Schreiner asserts to convictions for raping and sodomizing his teenage daughter. As to the

rape conviction, Schreiner contends the statutory language criminalizing "penetration" of the female genitalia by "a finger, the male sex organ, or any object" creates alternative means of committing the offense. We disagree. As to the aggravated criminal sodomy conviction, we hold Schreiner's alternative means challenge to be barred on appeal as invited error because his trial counsel requested the jury instruction about which he now complains. Schreiner also says the prosecutor overstepped in closing argument creating reversible error and the trial judge improperly sentenced him. We reject those claims, as well, and affirm in all respects.

## FACTUAL AND PROCEDURAL HISTORY

Given the issues Schreiner raises on appeal, we need not set forth at length the sordid details the Sedgwick County jury heard during the 4-day trial in October 2009. The criminal charges stem from incidents in 2005, but Schreiner's sexual abuse of his daughter A.S. began earlier. During most of the relevant time, A.S. lived with Schreiner, her stepmother, two younger siblings, a stepsibling, and a half sibling. The evidence showed that on Halloween night 2003 Schreiner put his hands down A.S.'s pants while she was sleeping on a sofa in the living room of their home. At trial, A.S. described an incident in May 2005 when Schreiner had her perform oral sex on him while the act apparently was being recorded or broadcast through a computer and webcam in the room. A.S. testified to another incident in 2005 during which Schreiner forced her to undress, took off his own clothes, and then inserted his penis into her genitalia. In August 2005, after he had been drinking heavily one night, a naked Schreiner went into A.S.'s bedroom and fondled her breasts. She immediately told her stepmother what had happened. A.S.'s stepmother went into the bedroom and discovered what she determined to be semen on the bed sheets. Shortly afterward, she and her children moved out of the house. Schreiner and his children moved in with his mother. After that, in November 2005, Schreiner again thrust his hands into A.S.'s pants and touched her buttocks.

About that time, A.S. told a friend at school about what had happened to her. The information was quickly passed along several times and prompted a State investigation at the end of 2005.

At trial, Schreiner faced four charges: (1) one count of rape for the incident in which he penetrated A.S.'s genitalia, a violation of K.S.A. 21-3502(a)(1)(A) (Furse); (2) one count of aggravated sodomy when he forced her to fellate him in May 2005, a violation of K.S.A. 21-3506(a)(3)(A) (Furse); (3) one count of aggravated indecent liberties with a child for the August 2005 incident; and (4) one count of aggravated indecent liberties with a child for the November 2005 incident, both violations of K.S.A. 21-3504(a)(2)(A) (Furse). The jury found him guilty of each count. The district court imposed a controlling sentence of 343 months in prison on Schreiner by running the time on some of the convictions concurrently and some consecutively. The mechanics of fashioning that term of imprisonment do not figure in our review. Schreiner has timely appealed.

## RAPE CONVICTION: NO ALTERNATIVE MEANS

Schreiner contends the rape conviction must be reversed because the offense may be committed by alternative means and the prosecution failed to present evidence supporting each of the means submitted to the jury. We first look at the concept of alternative means offenses as the Kansas Supreme Court has developed that body of law. We then apply the doctrine to the aspect of the rape statute Schreiner challenges. In making that analysis, this court considers the facts in the light most favorable to the State, as the party prevailing in the district court. An appellate court neither reweighs the evidence generally nor credits witness testimony contrary to the verdicts. See *State v. Trautloff*, 289 Kan. 793, 800-01, 217 P.3d 15 (2009); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). Having accepted the facts in that manner, this court then applies alternative means principles to the language of the rape statute. The issue, thus presented, is one of law, affording this court unconstrained review. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

Alternative means essentially entail materially different ways of committing a particular crime based on the statutory definition or elements of the offense. For example, this court has held that aggravated robbery, as defined in K.S.A. 21-3427, is an alternative

means crime because a person can commit the offense in either of two distinct ways: (1) by inflicting bodily harm on the victim while taking property from him or her; or (2) by taking the property while armed with a dangerous weapon. *State v. Reed*, 45 Kan. App. 2d 372, 385, 247 P.3d 1074 (2011). Those reflect different factual circumstances. In one, the victim suffers a physical injury. In the other, the criminal has a handgun, a knife, or some other weapon but need not even touch the victim. (In some instances, of course, the facts would satisfy both means: the perpetrator stabs a man and then takes his wallet.) Other criminal statutes, however, establish only one way to commit an offense, although they may use synonymous or redundant terms to define the prohibited conduct. For example, criminal damage to property is defined in K.S.A. 21-3720(a)(1) as "intentionally injuring, damaging, mutilating, defacing, destroying, or substantially impairing the use of any property" of another person without permission. The essence of that offense is causing harm to someone else's property. The legislature simply chose half a dozen phrases to say so in drafting the statute. See *State v. Simmons*, No. 102,900, unpublished decision filed March 25, 2011, slip op. at 5-6, *rev. denied* 293 Kan. 1113 (2011) (Criminal damage to property is not an alternative means crime because the statutory terms reflect linguistic redundancy rather than different actions.).

When a statute establishes alternative means of committing a crime, the State must present evidence sufficient to support each means submitted to the jurors in the instructions. All of the jurors must be convinced beyond a reasonable doubt the defendant committed the offense. But the jurors need not agree on which of the alternative means has been proven. *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010). A general verdict of conviction is legally proper so long as the record contains sufficient evidence to support each means. See *Wright*, 290 Kan. 194, Syl. ¶ 2; *State v. Stevens*, 285 Kan. 307, 316, 172 P.3d 570 (2007). Should evidence be lacking on one of the means, however, then a guilty verdict fails for insufficient evidence even though there may be overwhelming evidence supporting the other means. See *Wright*, 290 Kan. at 204-06. A verdict without sufficient evidence requires an appellate

court to reverse the conviction and enter a judgment of acquittal. See *Tibbs v. Florida*, 457 U.S. 31, 40-41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982); *State v. Hollins*, 9 Kan. App. 2d 487, 489-90, 681 P.2d 687 (1984).

As provided in K.S.A. 21-3502, rape includes "sexual intercourse with a person who does not consent" because that person has been "overcome by force or fear." That was the charge against Schreiner. In turn, "sexual intercourse" is defined in K.S.A. 21-3501(1) as "any penetration of the female sex organ by a finger, the male sex organ or any object." The criminal offense, then, is the act of penetrating the female sex organ without the victim's consent. In this case, the jury instructions conformed to language of the rape statute and included the definition of sexual intercourse.

Schreiner argues that taken together the two statutes create alternative means of committing the crime of rape. That is, he says one means is penetration by a finger, another means is penetration by a penis, and a third means is penetration by any object. He then argues there was insufficient evidence to convict him because the State did not prove he used his finger or an object to violate his daughter. There was no evidence to that effect because that's not what happened.

But Schreiner parses the statutes too finely. The statutes actually define a single means of committing rape; it is nonconsensual penetration of the female genitalia with something. The definitional statute then characterizes the instrumentality as a finger, the male sex organ, or an object. All of those terms, strictly speaking, may be unnecessary. If they were omitted, sexual intercourse would be defined as penetration of the female sex organ. Anything used to accomplish the act of penetration would meet that definition. Inclusion of the term "object" does not really change the definition. Used as a noun, "object" means "something material that may be perceived by the senses," Merriam-Webster's Collegiate Dictionary 855 (11th ed. 2003), or "something visible or tangible," Webster's Third New International Dictionary Unabridged 1555 (1993). Given those meanings, it is difficult to conceive how penetration could be accomplished other than with an object. But including "object" in the definition makes abundantly clear that the

proscribed act of sexual intercourse, for purposes of the criminal statutes, encompasses more than the commonly considered meaning of penetration of the vagina by the penis. See Merriam-Webster's Collegiate Dictionary 1141 (11th ed. 2003) ("sexual intercourse" is "penetration of the vagina by the penis"). More pertinent to Schreiner's argument, a finger or a penis would qualify as an object, and in that respect, their inclusion does nothing to expand the definition or the scope of the statute.

The terminology in the statutory definition of sexual intercourse functions in the same way as the constituent phrases in the criminal damage to property statute. The wording reflects verbal redundancy rather than differing ways or alternative means of committing a criminal offense. In short, the definition of sexual intercourse cannot reasonably be viewed as creating alternative means of committing rape.

Schreiner attempts to bolster his argument by invoking the rule of statutory construction that suggests each word of a statute ought to be given meaning and none should be rendered meaningless if possible. See *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage."). While that canon certainly is one aid in construing statutory language, it is neither the only one nor the cardinal one.

The appellate courts' overriding consideration rests in determining the legislature's intent in enacting a statute. In construing statutory provisions, the appellate courts are to gather the legislative purpose and intent from the language used, and they are to give effect to that purpose and intent. *State v. Gracey*, 288 Kan. 252, 257-58, 200 P.3d 1275 (2009); *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008). It is not the courts' business or function to add to or take away from the language of a statute. And the courts should not impose some meaning on a statute beyond what the words themselves convey through their common and usual definitions. *Gracey*, 288 Kan. at 257. Here, the common meaning of "object" encompasses both fingers and male sex organs. In using a broad term such as object, the legislature intended to

criminalize nonconsensual penetration without regard to the type of instrumentality used.

There is nothing in the statutory language to suggest the legislature intended that penetration with a finger should be treated as a materially different means of committing rape than penetration with the penis or penetration with some other object. Nor is there any reason to suppose the legislature meant to treat penetration with every conceivable object other than a finger or a penis as a single, alternative means in contradistinction to penetration with either of those anatomical parts. The statutes convey the legislative intent that a criminal defendant not evade a rape conviction by suggesting the object used places the act outside the definition of sexual intercourse. The terms chosen to accomplish that goal may overlap, but that choice does not create alternative means of committing the crime of rape.

The legislature may incorporate some degree of redundancy in statutory language to enhance comprehensibility or completeness, particularly when criminalizing conduct. Criminal statutes must give fair notice of the conduct they prohibit to satisfy constitutional due process requirements. *United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979); *State v. Atteberry*, 44 Kan. App. 2d 478, Syl. ¶ 6, 239 P.3d 857 (2010), *rev. denied* 292 Kan. 966 (2011). In criminalizing acts as rape, the legislature may have seen fit to include specific mention of particular anatomical parts to avoid a due process challenge to the statutory definition of sexual intercourse. That would be a legitimate purpose. And serving the interests of clarity and fair notice do not create alternative means of committing a crime where there otherwise would be none if the clarifying language were omitted. Had the legislature simply defined sexual intercourse as penetration of the female sex organ, the statute might have been marginally less clear, but it plainly would not have been susceptible to an argument that there were alternative means of committing rape in the way Schreiner suggests.

The statutory definition of sexual intercourse also could be read to say fingers and the male sex organ are the only body parts that could be used in an act of sexual intercourse, while object refers

to nonanatomical things. We need not and do not endorse that interpretation of the definition of sexual intercourse. But it would be fully consistent with the rule of construction Schreiner invokes. And it would not advance his ultimate argument any perceptible distance. The proscribed criminal conduct would remain nonconsensual penetration of the female sex organ. What is used to accomplish the act of penetration still would not create alternative means of committing the crime.

We find no alternative means error in Schreiner's rape conviction.

### SODOMY CONVICTION: ALTERNATIVE MEANS LOST TO INVITED ERROR

Schreiner argues his conviction for aggravated criminal sodomy must be reversed for lack of evidence to support one of the alternative means submitted to the jury. We reject the challenge because it amounts to invited error. Before outlining the basis for that conclusion, we consider whether the aggravated sodomy statute creates alternative means of committing the offense. The legal predicate for that analysis rests on the same general principles and the same standard of review as Schreiner's attack on his rape conviction.

Pertinent here, as provided in K.S.A. 21-3506(a)(3)(A), aggravated sodomy is a nonconsensual act of sodomy in which the victim has participated because of force or fear. Sodomy is defined in K.S.A. 21-3501(2) as including: (1) "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia"; (2) anal intercourse accomplished with "any body part or object"; and (3) various described acts commonly considered bestiality. In this case, the relevant jury instruction required the jurors to find that Schreiner had "engaged in sodomy" with A.S.; she was "overcome by force or fear"; and the act occurred in Sedgwick County within the applicable statute of limitations. The instruction then defined sodomy as does the definitional statute for sex crimes: "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia."

Schreiner submitted a proposed jury instruction on the sodomy charge that matched the instruction the district court gave in all material respects and included exactly the same definition of sodomy. (Although not especially relevant to the issues on appeal, the State proposed a comparable instruction with that definition.) At the instruction conference, counsel lodged no objection to the court's instruction on aggravated criminal sodomy. The requested instructions and the instruction the district court actually used expanded the scope of the offense as charged in the amended information on which the State proceeded to trial. There the charge against Schreiner was described in terms of a single means: he forced A.S. to perform oral sex on him. Had the jury been instructed in a way consistent with the charge in the amended information, Schreiner would have no basis to assert an alternative means challenge to the sodomy conviction.

The statutes criminalizing sodomy present a clear example of alternative means of committing an offense to which the principles of *Wright* apply. The statutes describe markedly different acts that are embraced within the general term "sodomy." Without belaboring the point, the acts range from oral sex to anal intercourse to intimacies with animals. There may be statutes bringing within the scope of a single criminal prohibition more varied conduct, but none readily come to the fore. Here, of course, the jury was instructed using a more limited definition of sodomy, excluding the plainly inapplicable means of anal intercourse and bestiality. The jury was instructed only as to acts of oral sex. Even that tailored definition, however, presents alternative means. The acts of fellatio and cunnilingus are sufficiently different, particularly taking into account the permutations based on the gender of the participants, as to be alternative means of committing criminal sodomy in Kansas.

The evidence in this case established one act of sodomy when Schreiner's daughter fellated him. But the jury was instructed on both means of oral sex as prohibited in the sodomy statute. No evidence supported the alternative means of committing sodomy through an act of cunnilingus. Neither side had any reason to believe there would be such evidence at trial. As we mentioned, the

charging instrument contained no such allegation against Schreiner. Nonetheless, under *Wright*, if that were the end of the matter, this court would be required to reverse the conviction and enter a judgment of acquittal.

But the appellate courts have long recognized that a party may not invite error in a case and then complain of that error as a ground for reversing an adverse judgment. *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011). That common-sense rule applies in criminal and civil proceedings. Parties cannot complain to an appellate court about their own conduct—or that of their lawyers—or about rulings or decisions they have asked a trial judge to make. If parties get what they ask for from district court judges, we will not reverse judgments against them even though they may think better of their requests on appeal. As the Kansas Supreme Court stated in *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982): "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review."

Jury instructions present a prime instance illustrating the soundness of the invited error rule. See *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008); *State v. Hernandez*, 44 Kan. App. 2d 524, 528, 239 P.3d 103 (2010), *pet. for rev.* filed October 1, 2010 (pending); *State v. McCoy*, 34 Kan. App. 2d 185, 189-90, 116 P.3d 48, *rev. denied* 280 Kan. 988 (2005) (citing cases). The Kansas Supreme Court recently restated the rule this way: "When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal." *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011).

The *Angelo* decision is particularly instructive in demonstrating the efficacy of the invited error doctrine regarding jury instructions. In that case, Angelo was charged with first-degree murder. Although there was evidence to support instructing the jury on second-degree murder as a lesser included offense, Angelo specifically requested the trial court refrain from doing so. Angelo wanted the jury to face an all-or-nothing decision between first-degree murder and acquittal with no room to compromise on a lesser, though still serious, offense. While the district court obliged

Angelo, the jury did not. On appeal, Angelo argued that the district court committed reversible error in failing to instruct on a proper lesser included offense even though he received the very jury instructions he requested at trial. He pointed out that K.S.A. 22-3414(3) requires district courts to instruct on lesser included offenses supported in the evidence. The Kansas Supreme Court rejected the argument, since "Angelo invited this error." 287 Kan. at 280. The court then cited the general rule: "A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal." 287 Kan. at 280.

In *Angelo*, the defendant requested an instruction not be given and complained on appeal of the district court's compliance with that request. Here, Schreiner asked for a particular instruction and now complains of the district court's assent in giving the instruction. We see no material difference between those two sets of circumstances for purposes of the invited error rule. In each instance, the district court did what the defendant wanted, and the defendant has turned that result into a purported ground for reversal of a conviction on appeal. The Supreme Court apparently saw no difference either. In *Angelo*, it specifically likened the district court's invited failure to give an instruction there to an earlier decision applying the invited error rule to bar an appeal based on the giving of a requested instruction. *Angelo*, 287 Kan. at 280 (citing *State v. Kirtdoll*, 281 Kan. 1138, 1150-51, 136 P.3d 417 [2006]).

Accordingly, we decline to address Schreiner's alternative means challenge to the aggravated sodomy conviction because he requested the jury instruction upon which he premises the error. Schreiner presents us with an error he invited in the district court. It is, therefore, precisely the type of error the appellate courts do not consider.

We are not aware of any previous appellate case considering how the invited error rule should be applied when a defendant seeks reversal of a conviction based on alternative means principles. We find no sound reason invited error should be jettisoned in that circumstance.

The Supreme Court has explained that its alternative means requirements aim to protect a criminal defendant's statutory right

to a unanimous jury verdict. *Wright*, 290 Kan. at 201, 205-06. Under K.S.A. 22-3421, each juror in a criminal case must agree that the verdict is that of a jury as a whole. If a juror disagrees, the court must send the jury out for further deliberations. The statute, thus, mandates unanimous verdicts. As outlined in *Wright*, the statutory right could be compromised if jurors were presented with the option of convicting a defendant on an alternative means of committing a crime for which insufficient evidence had been admitted at trial. 290 Kan. at 205-06. To avert that danger, the courts have fashioned a remedy—reversal of a conviction and entry of acquittal for lack of evidence—to be applied without regard to actual prejudice to a defendant in a given case. Such a stern consequence ought to send a message to prosecutors and trial judges in future cases to draft and use jury instructions confined to those means actually supported in the evidence. But in cases tried before *Wright*, including this one, the parties and the district courts had far less reason to be so attentive. Hence, the jury instruction here included the alternative means of committing sodomy by an act of cunnilingus, although the charging papers never included that means and nothing in the evidence suggested that means.

The remedy adopted in *Wright* does not undercut the result we reach. A standard providing relief from an alternative means violation, though treated as inherently prejudicial, is entirely compatible with precluding any remedy because a defendant's invited error caused the violation. Nothing in *Wright* suggests otherwise, although invited error did not come up in that case. The analysis in *Wright* permitting a remedy without regard to proof of actual prejudice presupposes an error warranting relief. But invited error bears on that supposition, not the criteria for or scope of relief. Put another way, invited error looks at the cause of the violation and precludes *any* relief for a party instigating the violation. That is true regardless of the standards shaping the relief itself. Whether to allow a remedy only for errors causing prejudice or for otherwise harmless errors looks at the effect of a violation—not its cause. Under the invited error rule, a court need not consider the effects of a violation if the complaining party has caused the violation. In short, existence of invited error ends the inquiry in a case such as

this even if relief necessarily would have been afforded for the error had the complaining party not caused it.

Two other considerations support the applicability of the invited error rule in this case. First, jury unanimity in criminal cases is a statutory right rather than a fundamental constitutional right. *State v. Voyles*, 284 Kan. 239, 250, 160 P.3d 794 (2007) ("[T]he right to a unanimous jury verdict in a Kansas court is not a federal constitutional right or a state constitutional right, but rather a state statutory one."). Nothing in the United States Constitution requires unanimous verdicts in noncapital criminal cases tried in state courts. *Johnson v. Louisiana*, 406 U.S. 356, 358-59, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972); 406 U.S. at 367-68 (Powell, J., concurring); see *McDonald v. Chicago*, 561 U.S. 742, 766 n.14, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010). The Kansas Constitution does not establish such a right. See *Voyles*, 284 Kan. at 250-51. As the *Angelo* decision makes clear, the invited error rule supersedes a defendant's statutory rights, particularly when the invited error crops up in the jury instructions. Alternative means considerations fall in that category. And an alternative means challenge to a conviction may not be premised on an invited trial error. In reaching that conclusion, we neither consider nor purport to address the application of invited error to structural or other fundamental constitutional defects in a criminal proceeding.

Second, discarding the invited error rule for alternative means violations almost certainly would encourage unprofessional and destructive game playing. Defense counsel would have every incentive to salt jury instructions with language for alternative means on which no evidence had been submitted. A jury would be highly unlikely to convict on that means in the absence of evidence, so there would be little risk to a defendant. But inclusion of that language in the actual instructions would provide grounds for an automatic reversal and judgment of acquittal in an appeal of a guilty verdict. The criminal justice system ought to discourage at every opportunity that sort of connivance. (In making this point, we do not mean to suggest trial counsel for Schreiner acted improperly. Here, both the prosecutor and Schreiner's counsel requested essentially identical jury instructions on the sodomy count. And no-

body would have appreciated the alternative means implications of those requests before the Kansas Supreme Court handed down *Wright.*).

We affirm Schreiner's conviction for aggravated criminal sodomy.

### CLOSING ARGUMENT

Schreiner contends that in closing argument the prosecutor misstated the law pertaining to voluntary intoxication as a defense, thereby depriving him of a fair trial on the charge of aggravated indecent liberties with a child based on the August 2005 incident when he fondled A.S. in her bedroom. We find nothing in the prosecutor's remarks that amounted to prejudicial error compromising Schreiner's rights.

Voluntary intoxication provides a defense to a specific intent crime to the extent the perpetrator cannot form the particularized state of mind necessary to commit the offense. K.S.A. 21-3208; *State v. Gonzales*, 253 Kan. 22, 24, 853 P.2d 644 (1993) (Voluntary intoxication may be a defense if the defendant's "mental faculties" have been so impaired as to render him or her "incapable of forming the necessary specific intent required to commit the crime."). As charged in this case, aggravated indecent liberties with a child is a specific intent crime, requiring the defendant lewdly fondle or touch the victim with the particular intent to arouse or satisfy his or her own sexual desires or those of the victim. See *State v. Kessler*, 276 Kan. 202, 210-11, 73 P.3d 761 (2003). Voluntary intoxication is a defense to the crime to the extent it negates the intent to arouse or satisfy.

In this case, the district court properly instructed the jury on voluntary intoxication as a defense to the August 2005 charge of aggravated indecent liberties with a child. Using the pattern instruction, the district court informed the jury:

"Voluntary intoxication may be a defense to the charge of aggravated indecent liberties with a child where the evidence indicates that such intoxication impaired a defendant's mental faculties to the extent that he was incapable of forming the necessary intent to arouse or satisfy the sexual desires of [A.S.] or the defendant or both."

See PIK Crim. 3d 54.12-A.

The evidence showed Schreiner to have been inebriated at the time of the incident and, thus, supported giving the instruction. A.S. described him as highly intoxicated. And afterward, he had passed out on the floor of what was described as the laundry room of the home. Although Schreiner did not testify at trial, a defendant's testimony is not a legal prerequisite for an intoxication instruction. See *State v. Heiskell*, 8 Kan. App. 2d 667, Syl. ¶ 6, 666 P.2d 207 (1983) (A trial court should give a self-defense instruction supported in the evidence even if the defendant personally neither bolsters nor negates the defense.).

Against that backdrop, we look at the prosecutor's statements in closing argument that Schreiner contends caused error. First, the prosecutor asked the jury to consider, "Did [Schreiner's intoxication] mean that he didn't have the intent to do what he did?" Second, the prosecutor told the jury "to find that intoxication is not an excuse for this behavior in this count." Both comments were made in the context of a longer discussion of the law and the facts pertaining to the indecent liberties charge based on the August 2005 assault. The Kansas Supreme Court recently pointed out the importance of reviewing counsels' remarks in jury summations in light of the overall thrust of the point being made rather than as isolated snippets removed from the surrounding commentary—commentary that often lends material shading and depth to what might otherwise appear to be of questionable propriety standing alone. See *State v. Naputi*, 293 Kan. 55, 260 P.3d 86, 90-92 (2011).

Appellate review of alleged prosecutorial error in argument to a jury entails a two-step analysis. First, the appellate court must decide whether the comments fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. Second, if the prosecutor has exceeded those bounds, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury to the extent the defendant was denied a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009) (outlining mode of analysis); see *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009) (noting

considerable range permitted advocates, including prosecutor, in arguing their causes in jury summations).

In the second step of that analysis, the appellate court weighs three factors:

" '(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial], have been met.' [Citations omitted.]" *McReynolds,* 288 Kan. at 323.

The Kansas Supreme Court recently reiterated the standard in *State v. Hernandez*, 292 Kan. 598, 603, 257 P.3d 767 (2011).

Schreiner contends the prosecutor's rhetorical question to the jury improperly implied intoxication had to negate general criminal intent in addition to the specific intent required to establish aggravated indecent liberties with a child to warrant a not guilty verdict. Taken in context, the comment did not. On its face, the question itself fails to distinguish between general intent and specific intent. But in that portion of the summation, the prosecutor was discussing the particularized intent necessary to prove the offense. He described how Schreiner entered the bedroom, made his way to A.S.'s bed, reached under her nightshirt, and fondled her breasts. The prosecutor also pointed out that the undisputed evidence showed that Schreiner ejaculated on the bed sheets. That evidence graphically negates the notion that Schreiner was too intoxicated to form the intent to arouse or satisfy his own sexual desires. The prosecutor asked the jurors, "Did it [Schreiner's intoxication] impair his ability to form the intent?" He then posed the disputed rhetorical question and finally suggested to each juror, "Judge for yourself."

The tenor of that portion of the argument plainly goes to the issue of intoxication negating the specific criminal intent necessary to prove aggravated indecent liberties. Especially given the instruction on voluntary intoxication, we believe reasonable jurors would

have understood the argument as addressing that issue. The instruction directly informed the jury that intoxication bore on the narrow question of Schreiner's ability to form the intent to arouse or satisfy sexual desires, rather than on general criminal intent. The prosecutor's argument was proper. Accordingly, we do not consider the criteria for determining the degree of error in a prosecutor's remarks to the jury.

We turn to Schreiner's second quarrel with the closing argument. The prosecutor's request that the jury "find that intoxication is not an excuse for the behavior" depicted in the evidence about the August 2005 incident presents a couple of intriguing issues we decline to resolve. Ultimately, the comment did not deprive Schreiner of a fair trial on the particular charge of indecent liberties.

Schreiner and the State spar over whether the comment correctly states the law, *i.e.*, is intoxication an "excuse" for a specific intent crime? The prosecutor's remark appears to accurately summarize a legal proposition the Kansas Supreme Court has articulated. See *State v. Pratt*, 255 Kan. 767, 768-69, 876 P.2d 1390 (1994); *State v. Gonzales*, 253 Kan. 22, Syl. ¶ 1, 853 P.2d 644 (1993). In *Pratt* and *Gonzales*, the court stated: "Voluntary intoxication is neither an excuse for nor a justification of crime. In specific intent crimes, however, voluntary intoxication may be raised as a defense." *Pratt*, 255 Kan. 768-69; *Gonzales*, 253 Kan. 22, Syl. ¶ 1.

The question remains, however, whether a prosecutor's correct statement of a legal proposition might, nonetheless, amount to an improper argument. We would presume so in some circumstances. The discussion of law wholly impertinent to the case would be objectionable at the very least and potentially confusing to the jury. Even relevant legal principles could be presented with technical accuracy, yet be cast in argument with inflammatory or impermissibly prejudicial language. A prosecutor, for example, could couch a literally correct explanation of other crimes evidence in a way that unduly emphasized how that information might be used to infer a defendant's propensity to be bad while minimizing the impermissibility of that inference.

The prosecutor's comment discounting intoxication as an excuse has characteristics of a technically correct though problematic argument. The difference between a legal excuse that would permit a jury to acquit a defendant and a typical defense to the charged crime is a subtle one. A defense typically negates or raises a reasonable doubt about an element of the offense. Thus, intoxication goes to the element drawn from the specific intent required to commit aggravated indecent liberties with a child. Intoxication is, therefore, a defense. But a legal excuse operates differently. A defendant relying on a legal excuse admits all of the elements of the crime but argues that he or she acted under extenuating circumstances the law recognizes as excusing the wrongful conduct or requiring that conviction and punishment be withheld. See *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1079-80 (9th Cir. 2004) (discussing legal excuse in criminal cases as mitigating culpability rather than negating an element of the offense). Compulsion, for example, presents a legal excuse. See K.S.A. 21-3209. As defined in Kansas, compulsion requires a defendant be found not guilty of a crime other than murder or manslaughter if he or she commits the offense based on a reasonable belief that a threat of imminent physical harm or death will be carried out against him or her or a close family member. K.S.A. 21-3209. Compulsion, as with other legal excuses, does not negate an element of the criminal offense and, thus, is not technically a defense. Rather, it reflects a value judgment that the commission of some crimes should not be punished in certain situations. Ultimately, however, valid defenses and legal excuses lead to the same outcome for the defendant—a verdict of not guilty. Thus, legal excuse frequently gets referred to and functionally treated as a form of defense. See PIK Crim. 3d 54.13 (compulsion termed "a defense" in jury instruction).

Here, the prosecutor's comment, although correct, may have injected some confusion into the proceedings. The jury instructions did not address legal excuse, since the doctrine was not at issue in the case. We doubt lay jurors would have distinguished between a defense and a legal excuse in listening to closing arguments. They may have assumed the two to be synonymous and, therefore, understood the prosecutor to be suggesting intoxication either should

not be a defense in this case or could not be a defense in any case. The comment could be taken either way. The first would be a fair comment on the evidence; the second would be a misstatement of the law.

Schreiner's trial counsel lodged no contemporaneous objection. But no objection need be made to preserve the issue when a prosecutor materially misstates the law or the evidence. *King*, 288 Kan. at 349. We suppose without deciding that the same rule would apply to a correct but misleading or confusing characterization of legal doctrine. That is, defense counsel would not be required to make a contemporaneous objection to such a statement to preserve the point for appeal.

For purposes of deciding the issue, we also assume the second step of the analysis for prosecutorial misstatement to the jury should be applied. We consider the three criteria for determining the impact of an improper statement in argument. The comment here was neither gross nor flagrant. As we noted, it was a brief statement that accurately presented a fairly obscure legal point in a way that might be confusing to lay jurors. But the prosecutor did not dwell on the point and certainly did not turn it into the focus of the summation. Indeed, the comment related to only one of the four charges against Schreiner. For essentially the same reasons, we fail to see the comment as displaying prosecutorial ill will. The brevity of the statement and its ambiguity suggest no carefully conceived effort or plan to taint the jurors.

Finally, we doubt the comment had much impact on the jurors' view of the evidence or their decision to convict. As we have discussed, the issue of intoxication related solely to proof of the specific intent on Schreiner's part to arouse or satisfy his own sexual desires or those of A.S. during the August 2005 incident. A.S.'s testimony established all of the other requisite elements and provided some circumstantial evidence of the specific intent. The jury plainly found A.S. generally credible, since it brought back convictions on the other charges that depended largely on her testimony. In addition, however, the stepmother's uncontradicted testimony that she found semen in the bed sheets immediately following the incident establishes compelling circumstantial evidence that

Schreiner had satisfied his own sexual desires in assaulting A.S. despite his intoxication.

The Kansas Supreme Court recently clarified how the three criteria should be weighed in determining if a prosecutor's remarks to a jury have compromised a defendant's right to a fair trial. *Naputi*, 293 Kan. at 55, 260 P.3d at 89-92; *Hernandez*, 292 Kan. at 603-04. In *Naputi* and *Hernandez*, the court applied the general principles outlined in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), to prosecutorial argument in jury trials. When a trial error implicates a constitutional right, the reviewing appellate court " 'must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict.' " *Hernandez*, 292 Kan. at 603 (quoting *Ward*, 292 Kan. at 565). As the party benefitting from the purported constitutional error, the State bears the burden of meeting the standard. *Hernandez*, 292 Kan. at 604. If no constitutional right has been implicated, the reviewing court applies a more relaxed standard and may affirm a conviction if there is "no reasonable probability" the error contributed to the verdict. *Ward*, 292 Kan. at 565.

In *Hernandez*, the court indicated that so long as a defendant asserts the prosecutor's remarks compromised his or her constitutional rights to a fair trial and to due process, the more stringent level of review mandated in *Ward* governs. 292 Kan. at 603-04. Thus, *Hernandez* seems to stand for the proposition that the more stringent standard should be applied whenever a defendant claims a prosecutor's erroneous remarks adversely affected his or her constitutional rights.

Just when the appellate courts should apply the less rigorous standard of review remains unclear. At some level of abstraction, every prosecutorial error to a greater or lesser degree degrades a criminal defendant's constitutional right to a fair trial and to due process. If the triggering mechanism for the stricter standard lies in the defendant's assertion that his or her constitutional rights have been impaired, we fail to see exactly when the lesser standard would be appropriate. This might be a case for the lesser standard, since the offending portion of the summation amounted to a brief,

correct statement of a legal principle that might have been confusing to the jury. Absent an objective way to determine which *Ward* standard should apply, we opt to use the beyond-a-reasonable-doubt test.

Even applying that standard, we entertain no reasonable doubt that the prosecutor's comment contributed to the guilty verdict the jury brought back against Schreiner for indecent liberties charge based on the August 2005 incident. We reach that conclusion for the same reasons we noted in considering the third factor in the analysis of prosecutorial misstatements to the jury. The brief remark bore only on Schreiner's specific criminal intent. And the undisputed evidence, albeit circumstantial, clearly supported the existence of the requisite specific intent for conviction. The jury was properly instructed on how to consider that evidence. We, therefore, reject Schreiner's contention that the prosecutor's comments in closing argument created reversible error.

### SENTENCING ISSUES

Schreiner asserts two challenges to the way the district court sentenced him. He argues the district court's decision to impose the aggravated term of imprisonment permitted within the sentencing guidelines violated his constitutional rights because a jury did not make the factual determinations supporting the punishment. He says he must receive either the standard or mitigated sentence required under the guidelines based on his criminal history and the severity level of the crimes of conviction. The Kansas Supreme Court has rejected that argument, as he acknowledges. See *State v. Johnson*, 286 Kan. 824, Syl. ¶ 5, 190 P.3d 207 (2008).

Schreiner next argues that the district court's use of his past convictions in determining an appropriate sentence impairs his constitutional rights because the fact of those convictions was not determined beyond a reasonable doubt by the jury. He relies on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to support that proposition. He also acknowledges the Kansas Supreme Court has rejected that argument and has found the State's current sentencing regimen conforms to the Sixth and Fourteenth

Amendments to the United States Constitution with respect to the use of a defendant's past convictions in determining a presumptive statutory punishment. *State v. Fischer*, 288 Kan. 470, Syl. ¶ 4, 203 P.3d 1269 (2009); *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002).

Given controlling Kansas Supreme Court authority otherwise, we decline Schreiner's invitation to reverse those sentencing determinations.

Affirmed.