NOT DESIGNATED FOR PUBLICATION

No. 112,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW SIDNEY JUDD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed May 20, 2016. Reversed in part, vacated, and remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and WALKER, S.J.

*Per Curiam*:  Defendant Matthew Judd appeals convictions for possession of illegal drugs and paraphernalia following a jury trial in Lyon County District Court. Law enforcement officers confiscated the contraband in a search of a mobile home Judd rented and shared with several other people. We reverse and enter judgments of acquittal on a conviction for possession of methamphetamine and a conviction for possession of paraphernalia for lack of evidence showing Judd possessed the illicit items. We reverse the remaining conviction for felony possession of marijuana and remand for a new trial

1

because the prosecutor's closing argument alone or in combination with an error in the jury instructions deprived Judd of a fair trial.

## FACTUAL AND PROCEDURAL HISTORY

In late 2013, Lyon County Sheriff's Deputies Cory Doudican and Heath Samuels, along with Emporia Police Officer Robert Shipley, went to the mobile home. The officers were assigned to an interagency drug task force, although the precise purpose of their visit that day isn't particularly clear from the record. As the officers approached the door of the mobile home, Preston Dobson came out on the porch. Doudican smelled marijuana and through the open front door saw a glass pipe—likely drug paraphernalia—on a table in the living room.

The officers identified Dobson and determined he had outstanding warrants, so they immediately arrested him. They searched Dobson and found small plastic bags and a syringe, also likely drug paraphernalia. Dobson told them another person was inside. The officers summoned the occupant to come out. When they heard nothing, they entered the mobile home. The officers found Steven Carroll asleep in one of the bedrooms. They awoke him and secured the mobile home while they sought a search warrant.

After promptly obtaining a warrant, Doudican and Samuels searched the mobile home. In addition to the pipe Doudican had seen on the table, they found a zippered case underneath the cushions of a sofa in the living room. The case contained a digital scale and a glass pipe of the sort used to smoke illegal drugs. A similar pipe was found in Carroll's bedroom. The officers also confiscated from the kitchen what they described as a homemade smoking device fashioned from a plastic bottle. In the closet of a second bedroom, the officers found a grinder they considered drug paraphernalia.

Carroll told the officers he resided at the mobile home and used the bedroom where he had been sleeping. He admitted the pipe found there belonged to him. Carroll said Judd and his girlfriend used the second bedroom. The officers found men's and women's clothing in that bedroom. Dobson had been staying at the mobile home for several days. He slept on the couch in the living room and placed his belongings along one wall of the living room. A third bedroom appeared to be the domain of a resident dog and was described as being in a rather unhygienic state as a result. The law enforcement officers noted a video security system, including a camera at the front of the mobile home and a monitor inside. Neither Judd nor his girlfriend showed up at the mobile home while the law enforcement officers were there.

A forensic chemist with the Kansas Bureau of Investigation found marijuana in the grinder taken from Judd's bedroom and traces of methamphetamine in the glass pipe in the zippered case.

The State charged Judd with possession of methamphetamine, a felony, based on the residue in the glass pipe; felony possession of marijuana for the material in the grinder; and one misdemeanor count of possession of paraphernalia for both the grinder in the closet and the smoking device in the kitchen. In a 1-day trial in July 2014, the jury convicted Judd of all three charges. The only witnesses were Doudican, Samuels, and the KBI chemist. The officers testified to their interactions with Dobson and Carroll and their search of the mobile home. Samuels provided undisputed testimony that only Judd had signed the lease as a tenant of the mobile home. The State offered no out-of-court statements from Judd, his girlfriend, or others that incriminated him.

At a later hearing, the district court sentenced Judd to a prison term of 30 months for possession of methamphetamine to be served concurrently with lesser terms of incarceration for possession of marijuana and possession of paraphernalia. Judd has timely appealed.

3

LEGAL ANALYSIS

*Sufficiency of the Evidence*

For his first issue on appeal, Judd challenges the sufficiency of the evidence to support the convictions. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing below, here the State, and in support of the jury's verdicts. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). At the same time, however, convictions may not rest on speculation or surmise. See *State v. Williams*, 229 Kan. 646, 663-64, 630 P.2d 694 (1981); *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582, 203 P.3d 735 (2009).

Pivotal here, all of the charges required the State to prove that Judd had possession of the drugs or paraphernalia. For purposes of those crimes, "possession" is statutorily defined as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2015 Supp. 21-5701(q). The definition requires the defendant know of the contraband and have some intent to or right of control. See *State v. Keel*, 302 Kan. 560, 567, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). The statute essentially codifies what had been a settled judicial explanation of possession of drug-related contraband. *Keel*, 302 Kan. at 567; *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989); *State v. Flinchpaugh*, 232 Kan. 831, 833-34, 659 P.2d 208 (1983).

The Kansas appellate courts have recognized that the observation or seizure of drug contraband in a common area of a residence occupied by multiple individuals is itself insufficient to convict an occupant of unlawful possession. *Keel*, 302 Kan. at 567-68; *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991); see *State v. Abbott*, 277 Kan. 161, 167-68, 83 P.3d 794 (2004) (acknowledging and applying rule to motor vehicle). Something more must link the defendant to the drugs or paraphernalia. The appellate courts have identified various circumstantial and direct indicia of knowledge and control that may forge that link. Those indicia include: (1) the defendant's past use or sale of drugs; (2) the defendant's proximity to the contraband upon which the charges have been based; (3) the location of the contraband in plain sight; and (4) the defendant's incriminating statements or suspicious behavior related to the contraband. *Keel*, 302 Kan. at 567-68; see also *Abbott*, 277 Kan. at 168 (noting those indicia and including defendant's physical possession of other drugs or paraphernalia when arrested or otherwise searched by law enforcement officers).

We consider the drugs and paraphernalia the officers found in the living room and kitchen of the mobile home separately from the grinder they found in the bedroom Judd shared with his girlfriend. But, as we explain, the disposition of the issue is unusual because the State charged only one count of possession of paraphernalia, lumping together the grinder and the altered plastic bottle as a single offense. Both Dobson and Carroll had access to the common areas of the mobile home to the same extent as Judd. Indeed, Dobson actually had been living in a common area for at least a couple of days when the law enforcement officers showed up. The methamphetamine was discovered in a zippered case hidden in the cushions of the sofa that Dobson had been using as a bed. Judd was not present during the encounter with Doudican and Samuels. All of that put Dobson in much greater proximity to the methamphetamine and weighed against Judd's possession of it. And Dobson had personal possession of other drug contraband when the officers arrived, meaning he was no stranger to those kinds of things. The State's evidence included no representations from the residents of the mobile home attributing

5

the zippered case or the methamphetamine to Judd or anyone else. Consistent with Kansas law, a verdict convicting Judd of possession of the contents of the case, including the methamphetamine, rested on unmoored speculation rather than reasoned inference. It was, then, insufficiently supported in the evidence.

When trial evidence fails to establish the crime of conviction, an appellate court should reverse the conviction, vacate the resulting sentence, and enter a judgment of acquittal. See *Tibbs v. Florida*, 457 U.S. 31, 40-41, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982); *State v. Scott*, 285 Kan. 366, Syl. ¶ 2, 171 P.3d 639 (2007); *State v. Hollins*, 9 Kan. App. 2d 487, 489-90, 681 P.2d 687 (1984). We do so here as to Judd's conviction for possession of methamphetamine.

The same analysis guides our review of Judd's conviction for possession of paraphernalia based on the altered plastic bottle the officers found in the kitchen. The item could have been Dobson's or Carroll's and kept among their respective possessions until Judd left the mobile home. Nobody testified the modified bottle was regularly kept openly in the kitchen. Only speculation suggests Judd knew of the plastic bottle or had sole or joint possession of it. The jurors were instructed that to find Judd guilty they had to conclude he possessed both the modified bottle *and* the grinder. The evidence was insufficient to do so. We, therefore, reverse that conviction, vacate that sentence, and enter a judgment of acquittal.

Before turning to the grinder found in Judd's bedroom, we pause to say the jury's errant conclusions are not especially surprising. As we discuss later, the jury instructions did not adequately explain the legal principles governing possession of drug contraband when law enforcement officers recover items from common areas of a residence with multiple occupants. Moreover, the prosecutor's closing argument misstated the law to place what amounted to near absolute liability on Judd for any contraband in the mobile

6

home simply because he alone signed the lease. Those mistakes necessarily confounded the jurors' ability to apply the law to the facts in this case.

The grinder and the marijuana it contained offer a materially different circumstance than do the contraband in the common areas. The officers found the grinder in a closet in a bedroom Judd and his girlfriend occupied to the exclusion of other residents of the mobile home. That fact was undisputed at trial. But the officers' trial testimony is vague about how the grinder was kept in the closet. Neither we nor the jurors know if it was in plain sight, covered up by clothing, or hidden in a box or some other container. The officers appear to have readily found the grinder, supporting an inference that a person simply opening the closet would see it.

Accordingly, a factfinder could fairly conclude Judd had knowledge of the grinder and at least common or joint possession of it with his girlfriend. That sets the grinder apart from the drug contraband in the common areas of the mobile home. Who owned the grinder is irrelevant. The crime requires *possession* of proscribed items. Simply put, a person does not necessarily own everything he or she possesses (think hedge clippers borrowed from a neighbor) or possess everything he or she owns (think a car loaned to a child at college). Although less than overwhelming, the evidence would have supported Judd's conviction for possession of paraphernalia based on the grinder alone. But that's not how he was charged or how the possession of paraphernalia charge was presented to the jury. The evidence, however, also establishes a sufficient, if thin, basis for upholding Judd's conviction for possession of the marijuana found in the grinder. Judd offers no argument about the sufficiency of the evidence as to the marijuana distinct from the grinder, and the trial evidence doesn't really support one. We, therefore, reject the sufficiency argument as to the marijuana conviction.

*Absence of Jury Instruction on Nonexclusive Possession*

For his next point on appeal, Judd contends the district court erred in not giving the jurors an instruction outlining the indicia supporting possession of drug contraband as stated in *Keel* and *Abbott*. At trial, Judd neither requested that instruction nor objected to the district court's failure to give it. But he did not request the instruction the district court actually gave addressing possession and, thus, did not invite what he now challenges as error. See *State v. Dern*, 303 Kan. 384, 397-98, 362 P.3d 566 (2015).

The Kansas Supreme Court has outlined the sequential steps to be taken in assessing a claimed error in instructing jurors on the governing law. *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). The appellate court determines:  (1) reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. *Plummer*, 295 Kan. 156, Syl. ¶ 1. The test for harmlessness borrows the standards set forth in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), for assessing errors that compromise a criminal defendant's constitutional rights and those that do not. *Plummer*, 295 Kan. at 162-63. This method of analysis governs all challenges to jury instructions, even those raised initially on appeal. But when a criminal defendant challenges jury instructions for the first time on appeal, the reviewing court must find any defect caused clear error to reverse. See K.S.A. 2015 Supp. 22-3414(3); *State v. Haberlein*, 296 Kan. 195, 203-04, 290 P.3d 640 (2012).

The omission may be reviewed, but we must apply the clearly erroneous standard. An instruction on indicia of possession of drug contraband would seem to be both factually and legally warranted in this case. The circumstances here arose from the alleged possession of drug contraband where there may have been joint access and control or possession. So the considerations were factually relevant to what the jurors had

to decide. The indicia have been and remain part of the governing law in drug contraband cases. See *Keel*, 302 Kan. at 567-68. We fail to see why an instruction outlining those indicia would be legally inappropriate in this case.[1]

[1]An instruction informing jurors of factual considerations bearing on possession was at one time included among the pattern instructions for criminal cases. See PIK Crim. 3d 67.13-D. The instruction was to be given as part of a more general instruction defining possession of drug contraband in those particular cases in which the facts presented issues of "nonexclusive possession." No comparable instruction appears in PIK Crim. 4th, and the change from PIK Crim. 3d is unexplained. Obviously, such an instruction would not be factually appropriate in every drug case—only those in which the defendant did not have exclusive possession of the contraband.

The district court instructed the jurors on possession simply by giving them verbatim the statutory definition from K.S.A. 2015 Supp. 21-5701(q) and nothing more. Although the definition is necessarily a correct statement of the law, that doesn't automatically make it fully understandable to jurors in the fact-specific context of the case they must decide. Nor is it, by any means, a complete statement of the relevant law. The instruction refers to "joint control" and suggests the "knowledge of and the intent to have such control" may be sufficient. The law requires the defendant to have actual knowledge of the contraband. *Keel*, 302 Kan. 560, Syl. ¶ 1 (crime requires "specific intent to exercise control over the [controlled] substance, with knowledge of the nature of the substance"). The instruction then states alternatively that knowingly keeping an item in a place over which the defendant has access and a right of control establishes possession. But the instruction fails to explain in clear terms that Kansas law requires more than the contraband be in a common area of a place to which the defendant and others have access to satisfy the legal requirements for possession. Given the facts here, the omission reflects a material gap in the relevant legal principles. In turn, the jurors were given incomplete guidance on what constitutes possession, resulting in error. The district court provided the jurors with a separate instruction stating Judd had to act "intentionally" in possessing the drug contraband. But that information didn't really help the jurors understand the concept of possession.

Error alone, however, does not mandate relief. Judd must also demonstrate legal prejudice. And we must measure the prejudice to Judd under a more rigorous standard precisely because he failed to call the district court's attention to the error. The Kansas Supreme Court has restated the test for granting relief in that situation to be "whether [the appellate court] is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *State v. Williams*, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012); see *State v. Mireles*, 297 Kan. 339, Syl. ¶¶ 5-7, 301 P.3d 677 (2013); *State v. Trujillo*, 296 Kan. 625, 630-31, 294 P.3d 281 (2013). The burden is on Judd to make that showing. See *Williams*, 295 Kan. 506, Syl. ¶ 5.

If we were wrong in concluding insufficient evidence supported the convictions for possession of methamphetamine and for possession of the paraphernalia, this would provide an alternative ground for reversing those convictions. The ultimate remedy, however, would be a new trial rather than a judgment of acquittal. We, therefore, first consider the instructional error as to those convictions. Assuming the evidence were sufficient to support those convictions, it would have been barely so. Properly instructed, the jurors could have entertained a reasonable doubt as to Judd's guilt because inferences consistent with the indicia of possession outlined in *Keel* and *Abbott* would have more strongly pointed to Carroll and Dobson. Given the thin evidence on those convictions, we are firmly convinced there would have been a different result—either an acquittal or a hung jury—requiring us to reverse and remand for a new trial as a remedy for the instructional error.

The conviction for possession of the marijuana found in the grinder presents a considerably closer question. The circumstantial evidence pointing toward Judd's possession of the grinder (and the marijuana), perhaps jointly with his girlfriend, is somewhat stronger. While an instruction on the indicia of possession almost certainly would have aided the jurors in their consideration of that charge, we are not firmly

10

persuaded the outcome would have been different. It would have been a better informed outcome but not necessarily a different one. Considered against the clearly erroneous standard, then, we decline to reverse the conviction for possession of marijuana on this point.

*State's Closing Argument*

Judd next contends the prosecutor's closing argument amounted to misconduct requiring reversal of all three convictions. We agree. In arriving at that conclusion, we focus on one aspect of the closing argument. Judd has raised other complaints about the argument, but we put them aside. The closing arguments were comparatively brief—each side asked for 10 minutes to sum up. There really wasn't that much evidence to discuss.

Throughout her argument to the jurors, the prosecutor stated Judd could be held legally accountable for all of the drugs and paraphernalia Doudican and Samuels found in the mobile home because he had signed the lease as the tenant. To be plain, that is not the law in Kansas with respect to drug contraband law enforcement officers find in common areas of a dwelling occupied by more than one person. See *Keel*, 302 Kan. at 567-68; *Cruz*, 15 Kan. App. 2d at 489. The prosecutor's articulated position would make a resident owner of a dwelling criminally liable for any drug contraband guests or other occupants might bring onto the premises. The result would be a form of strict criminal liability that the law does not recognize.

The prosecutor, nonetheless, began the argument that way and returned to the idea as an emphatic refrain. The prosecutor immediately told the jurors:

> "The buck stops here. That's all there is to it. Mr. Judd is the only person on the
> lease for that house [address omitted]. The only person on the lease[;] the owner of the
> house. He had a bedroom there. Everyone else was staying there. You heard the officers

11

testify they didn't know how long each of those other people had been there. Whether it had been a short time or a long time. But the buck stops here."

The prosecutor reminded the jurors that drugs and paraphernalia were "throughout the entire house" and then added for emphasis, "Mr. Judd's house." Later, she repeated that contraband was found "[a]t his home" and again told the jurors, "The buck stops here." In her rebuttal argument, the prosecutor closed this way: "What we have is paraphernalia with methamphetamine and marijuana residue in Mr. Judd's house. Bucks [*sic*] stops here. His name's on the lease." The prosecutor began and concluded her pitch to the jurors with the same misstatement of the law. We have identified half a dozen references the prosecutor made to Judd being on the lease or the owner of the mobile home as a reason the jurors should find him guilty of the charges.

Kansas courts use a well-recognized, two-step test for measuring the impropriety of closing arguments in criminal cases:

> "'First, the appellate court must decide whether the comments fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. Second, if the prosecutor has exceeded those bounds, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury to the extent the defendant was denied a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009) (outlining mode of analysis); see *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009) (noting considerable range permitted advocates, including prosecutor, in arguing their causes in jury summations).'" *State v. Franco*, 49 Kan. App. 2d 924, 938, 319 P.3d 551 (2014) (quoting *State v. Schreiner*, 46 Kan. App. 2d 778, 793-94, 264 P.3d 1033 [2011], *rev. denied* 296 Kan. 1135 [2013]).

If the argument falls outside what is proper, the courts then look at three factors to assess the degree of prejudice:

12

"'(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman v. California*, 386 U.S. 18, [22-24,] 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) [conclusion beyond a reasonable doubt that the error . . . changed the result of the trial], have been met. [Citations omitted.]'" *State v. McReynolds,* 288 Kan. 318, 323, 202 P.3d 658 (2009).

The Kansas Supreme Court has recently reiterated this test. See *State v. Barber*, 302 Kan. 367, 378-79, 353 P.3d 1108 (2015); *State v. De La Torre*, 300 Kan. 591, 608, 331 P.3d 815, *cert. denied* 135 S. Ct. 728 (2014).

As we have already indicated, a prosecutor may not misstate the law in closing argument and engages in what is commonly characterized as misconduct by doing so. See *State v. Tahah*, 302 Kan. 783, 791, 358 P.3d 819 (2015) (prosecutor's misstatement of law in closing argument "constitutes error"); *State v. Huddleston*, 298 Kan. 941, 953, 318 P.3d 140 (2014) (prosecutor's erroneous characterization of premeditation in closing argument misconduct); *State v. Sellers*, No. 112,858, 2015 WL 9287026, at *3 (Kan. App. 2015) (unpublished opinion) ("A prosecutor commits misconduct by misstating the law applicable to a case."). The prosecutor patently erred here. We, therefore, move to the second phase of the analysis to gauge the resulting prejudice to Judd.

The prosecutor's argument seems undeniably gross and flagrant. The law is and has been clear that the owner of a dwelling occupied by multiple residents is not criminally liable for drug contraband by reason of his or her ownership interest alone. But the prosecutor argued that very proposition to the jurors and repeatedly urged them to convict Judd on that basis. The nature of the error and its repetition establish both grossness and flagrancy. See *State v. Ortega*, 300 Kan. 761, 782, 335 P.3d 93 (2014)

13

(hallmarks of grossly and flagrantly improper argument include "repeated comments emphasizing an improper point [and] planned or calculated statements"). We have on occasion excused an improper argument as harmless when the prosecutor's comments are fleeting and seemingly spontaneous rather than part of a discernable theme. See *State v. Perales*, No. 110,246, 2015 WL 6630443, at *4 (Kan. App. 2015) (unpublished opinion); *State v. Little*, No. 104,794, 2012 WL 3000342, at *9-10 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1252 (2013). Here, equating ownership of the premises with guilt was not just a theme of the prosecutor's argument, it was *the* theme.

Similar considerations infuse the determination of prosecutorial ill will. In *Ortega*, 300 Kan. at 782, the court explained that repeated reliance on a plain misstatement of the law evinces the requisite ill will to support prejudice. The prosecutor's argument here falters in both respects. The thrust of the argument fell well short of a debatable legal premise; it was obviously wrong. And the prosecutor hammered the jurors with the erroneous assertion. Although the prosecutor neither attempted to skirt a ruling of the district court prohibiting the argument nor forged ahead notwithstanding a sustained objection from Judd's lawyer, the thematic use of an improper legal proposition to promote a guilty verdict displays ill will.

Finally, we look at the quality of the evidence and ask whether it was so direct and overwhelming as to render the prosecutor's misstatements in argument of little import to the jurors in deciding to convict. Without repeating what we have already discussed, the evidence was anything but direct and overwhelming. It was, at best, skimpy and, as to some of the charges, wholly inadequate in our view. As we have indicated, the best explanation for the jury's verdicts rests on the combined impact of the prosecutor's closing argument and the omission of an instruction on the indicia of possession. The jurors reasonably could have concluded the law holds a tenant signing a lease for a dwelling responsible for drug contraband found on the premises even though other people also lived there. Such a mistaken conclusion looms large here and fatally infects each of

14

the verdicts. In short, the prosecutor's improper closing argument alone requires reversal of all three convictions and remand for retrial.

*Cumulative Error*

Judd also argues that the cumulative effect of the errors in the district court deprived him of a fair trial. Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result of the imperfections deprives the defendant of a fair hearing even when the errors considered individually could be considered harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court looks at the entire trial record to assess the aggregate effect of multiple trial errors. 301 Kan. at 168.

We choose not to belabor this point. But if we have overestimated the prejudicial impact of the prosecutor's closing argument as a discrete error requiring reversal, then the cumulative effect of the improper argument and the flawed jury instructions considered in tandem deprived Judd of a fair trial. Those errors in combination reasonably kept the jurors from understanding and applying the correct legal principles to the facts they found—all to Judd's detriment. Judd would, therefore, be entitled to relief in the form of a new trial based on cumulative error. *Cf. Smith-Parker*, 301 Kan. at 168 (evidentiary errors combined with instructional errors on pertinent legal principles resulted in prejudicial cumulative error); *State v. Magallanez*, 290 Kan. 906, 926-27, 235 P.3d 460 (2010) (same).[2]

[2]Judd has asserted additional reasons that his convictions should be reversed and he should receive a new trial. Given our rulings and the relief due Judd, we have no reason to address those arguments and decline to do so. We have held that Judd should be acquitted of two of the charges and is entitled to a new trial on the other charge. Alternatively, we have determined he should receive a new trial on all of the charges.

Finally, Judd has argued that his criminal history was incorrectly scored resulting in too severe a presumptive sentence. The issue is moot, since we have reversed all of the convictions and the concomitant sentences. Judd premised his substantive argument on *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014. After Judd filed his appellate brief, the Kansas Supreme Court overruled *Murdock*. *Keel*, 302 Kan. 560, Syl. ¶ 9, 590-91. If we were to consider Judd's sentencing argument on the merits, it would fail.

*Conclusion*

Judd's convictions for possession of methamphetamine and for possession of drug paraphernalia are reversed for insufficient evidence. The sentences are vacated, and judgments of acquittal on those charges are entered for Judd. Judd's conviction for possession of marijuana based on the material found in the grinder is reversed. The sentence is vacated, and the charge is remanded for a new trial. The district court shall enter such additional orders as may be necessary and consistent with this opinion.