IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,149

STATE OF KANSAS,
*Appellee*,

v.

SHAWN ROBERT SASSER,
*Appellant.*

SYLLABUS BY THE COURT

1.

Generally, a party cannot complain on appeal about a claimed error that was invited by that party.

2.

Whether the invited error doctrine applies is a question of law over which this court has unlimited review.

3.

A party's actions in causing the claimed error and the context in which those actions occurred must be carefully reviewed in deciding whether to trigger the invited error doctrine. There is no bright-line rule for its application.

4.

In an alternative means case, when a single act may be committed in more than one way, there must be jury unanimity on guilt for the single crime charged. But unanimity is not required as to the means by which the crime was committed as long as substantial evidence supports each alternative means.

1

5.

Alternative means error is a jury unanimity error injected into a trial through the confluence of the instructions given to the jury and the lack of evidence to support one or more means of committing the crime as set out in the instructions.

6.

Whether a case involves alternative means is typically a matter of statutory construction, which is a question subject to unlimited review.

7.

Whether a witness, expert or layman, is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion.

8.

K.S.A. 60-456(a) provides that "[i]f [a] witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony."

9.

On the record in this case, the defendant is not entitled to reversal of his conviction for felony criminal damage to property. The district judge did not abuse his discretion in admitting a lay witness' opinion on the value of damage to a victim's motorcycle.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 27, 2013. Appeal from Johnson District Court; STEPHEN R. TATUM, judge. Opinion filed March 31, 2017. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Shawn E. Minihan*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

*Per Curiam*: Shawn Robert Sasser petitions for review after the Court of Appeals affirmed his convictions for burglary and felony criminal damage to property. See *State v. Sasser*, No. 108,149, 2013 WL 5422322, at *4 (Kan. App. 2013) (unpublished opinion). Three issues are presented. First, whether the invited error doctrine prevents Sasser from challenging the jury instruction on the elements of burglary. Second, if the instruction issue can be reached, whether sufficient evidence supported each alternative means Sasser claims was identified as a basis for the jury to convict on the burglary count. And, third, whether a witness gave improper opinion testimony about the cost to repair a motorcycle because the State later used that testimony to support the felony conviction for criminal damage to property.

We agree the Court of Appeals erred when it applied the invited error doctrine under these circumstances, and we affirm the burglary conviction because sufficient evidence supported that instruction—assuming it presented alternative means. A majority of the court holds that Sasser is not entitled to reversal on the opinion testimony issue.

FACTUAL AND PROCEDURAL BACKGROUND

Sasser became enraged when his daughter decided to spend her birthday with his ex-wife (the daughter's mother) and the ex-wife's friend, Sean Zuber. On the evening of the birthday, Sasser sent a series of menacing text messages to his ex-wife over several hours. In them, he referenced killing her and Zuber, writing such things as: "Shortly you

3

will be in pieces begging for your life," "you will die begging for your life," and "I have been waiting for this day and you will for a short time beg me to stop."

After sending his last text, Sasser drove to his ex-wife's apartment. When he arrived, he knocked over her motorcycle and broke into the apartment. No one was home. While inside, he damaged a television set. Two neighbors tried to stop him, but he escaped after threatening one of them with a gun.

The State charged Sasser with attempted first-degree murder, burglary, criminal threat, felony criminal damage to property, misdemeanor criminal damage to property, and aggravated assault. The jury could not reach a verdict on the attempted first-degree murder or aggravated assault charges but convicted him on the others. He later pleaded guilty to aggravated assault and a lesser charge of attempted aggravated assault in lieu of attempted first-degree murder. The district court sentenced him to imprisonment for 26 months, including 12 months for burglary and 6 months for felony criminal damage to property as well as a consecutive term of 6 months in county jail.

Sasser appealed the burglary and felony criminal damage convictions. He argued the State failed to produce sufficient evidence to convict him on each alternative means of committing burglary that he claimed were contained in the jury instructions. He also argued the felony criminal damage to property conviction rested on improperly admitted lay opinion testimony. The Court of Appeals affirmed, holding Sasser invited any alternative means error by requesting the burglary jury instruction prior to trial and that the district court was within its discretion to admit the opinion testimony. See *Sasser*, 2013 WL 5422322, at *2, 3.

We granted Sasser's petition for review. Jurisdiction is proper. See K.S.A. 60-2101(b) (review of Court of Appeals decision).

4

THE INVITED ERROR DOCTRINE

Before addressing whether Sasser's burglary conviction must be reversed because the State failed to produce sufficient evidence of each alternative means of committing burglary, we must first decide whether the panel correctly sidestepped the question by invoking the invited error doctrine. See 2013 WL 5422322, at *2. We hold the panel erred.

*Additional Facts*

In its complaint, the State's burglary charge alleged:

"That on or about the 3rd day of July, 2011, in the County of Johnson, State of Kansas, SHAWN ROBERT SASSER, did then and there unlawfully, willfully, feloniously, knowingly and without authority enter into a dwelling, to-wit: apartment of Janet Sasser, *with the intent to commit a felony therein, to-wit: murder, aggravated assault, or criminal threat . . . .*" (Emphasis added.)

The trial court instructed the jury that to convict Sasser of this charge it was required to find:

"1. That the defendant knowingly entered an apartment which is a dwelling;

"2. That the defendant did so without authority;

"3. *That the defendant did so with the intent to commit first degree murder, aggravated assault or criminal threat, therein*; and

5

"4. That this act occurred on or about the 3rd day of July, 2011, in Johnson County Kansas." (Emphasis added.)

Prior to trial, both Sasser and the State requested proposed jury instructions for the burglary count virtually identical to the one given at trial. At the jury instructions conference after the close of evidence, the court and counsel confirmed the correct listing of the offenses in item three (first-degree murder, aggravated assault, or criminal threat). When asked by the court whether any other changes were required, both sides agreed the instruction was appropriate.

On appeal, Sasser contended the burglary conviction must be reversed because the State failed to produce sufficient evidence of each alternative means of committing burglary set out in the jury instruction. He argued these alternative means were that he intended "to commit first degree murder, aggravated assault or criminal threat" inside his ex-wife's apartment, and that there was no evidence he intended to commit criminal threat.

The panel declined to reach the merits of this argument. In its view, Sasser invited the error by requesting the jury instruction before trial and then failing to object to it at the instructions conference. 2013 WL 5422322, at *2. The panel noted, "[T]his court previously has applied the invited error rule to situations involving alternative means," and added, "The invited error rule seems especially appropriate in this instance, where the language that allegedly creates the alternative means is found only in the jury instruction, not in the statutory language itself." 2013 WL 5422322, at *2 (citing *State v. Schreiner*, 46 Kan. App. 2d 778, 788, 264 P.3d 1033 [2011], and *State v. Degyves-Chavez*, No. 105,314, 2012 WL 924809, at *4 [Kan. App. 2012]).

6

*Standard of Review*

Whether the invited error doctrine applies is a question of law over which this court has unlimited review. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016).

*Discussion*

Generally, a defendant cannot complain on appeal about a claimed error that was invited. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014).

> "Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous. [Citation omitted.] It is elementary that a litigant cannot take contrary positions, one in which he has sought and procured an order, ruling or judgment in the trial court and another in the supreme court in which he complains of such order, ruling or judgment. . . . One who by his own act invites and leads the court into erroneous action cannot complain of it nor take advantage of the ruling." *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 (1962).

The defendant's actions in causing the alleged error and the context in which those actions occurred must be carefully reviewed in deciding whether to trigger this doctrine. There is no bright-line rule for its application. For example, we have held the doctrine does not apply to a structural constitutional error. *Verser*, 299 Kan. at 784; see also *State v. Logsdon*, 304 Kan. 3, 41, 371 P.3d 836 (2016) (acknowledging exception); *State v. Dupree*, 304 Kan. 377, 393, 373 P.3d 811 (2016) (same). And we have held a party must do more than just fail to object to a proposed jury instruction at the instructions conference. See *State v. Walker*, 304 Kan. 441, 445, 372 P.3d 1147 (2016) (invited error would not bar defendant from raising lesser included offense issue on appeal when counsel did not request instructions pretrial and confirmed that was still the case at the instructions conference); *State v. Dern*, 303 Kan. 384, 398, 362 P.3d 566 (2015)

(declining to apply invited error because defendant did not object to, or request, the challenged instruction); *State v. Soto*, 301 Kan. 969, 984, 349 P.3d 1256 (2015) (declining to apply invited error when counsel merely acquiesced in a ruling that the facts did not justify a lesser included offense instruction after court initially proposed it); and *State v. Lewis*, 299 Kan. 828, 855, 326 P.3d 387 (2014) (declining to apply invited error when defendant acquiesced to jury question response). On the other hand, when a defendant actively pursues what is later argued to be an error, then the doctrine most certainly applies. See *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008) (applying doctrine when defendant affirmatively requested no lesser included offense instructions because defense strategy was "all-or-nothing").

Sasser's case is more analogous to those in which we have declined to apply the invited error doctrine when counsel merely acceded to—but did not affirmatively request—a factually inappropriate instruction. The nature of the alternative means issue helps explain this.

> "'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.'" *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994) (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]), *disapproved of on other grounds State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014).

An alternative means error is not just about sufficiency of the evidence. It is a jury unanimity error injected into a trial through the confluence of the instructions given to the jury and the lack of evidence to support one or more means of committing the crime as set out in the instructions. This circumstance generates uncertainty about the verdict because, absent sufficient evidence that the defendant employed each one of the means

8

submitted to the jury, it is possible jurors "may have based their finding[s] of guilt on an invalid ground." *State v. Whitney*, 108 Wash. 2d 506, 511, 739 P.2d 1150 (1987); see also *State v. Wright*, 290 Kan. 194, 205, 224 P.3d 1159 (2010) (without assurance each juror's vote was supported by means for which there was sufficient evidence, "'[w]e have no guarantee that the jury was unanimous at the level of factual generality that matters most of all: guilt v. innocence'") (quoting Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275, 299 [Winter 2005]), *disapproved of on other grounds Brooks*, 298 Kan. 672. When this unanimity problem occurs, reversal is required. See *Wright*, 290 Kan. at 203.

Because the problem in an alternative means case is the appellate court's inability to conclude the jury based its verdict on means for which there was sufficient evidence, it is axiomatic that the error itself can only occur when the lack of evidence is combined with overbroad language in the jury instructions. See Mott, *Alternative Means Jurisprudence in Kansas: Why Wright is Wrong*, 62 Kan. L. Rev. 53 (2013) ("An 'alternative means' case arises when the court's instructions give the jury the option of convicting a defendant of a single offense under two or more statutory means.").

In *Dern*, we acknowledged leaving open the question of whether the invited error doctrine applies when the defendant requests a jury instruction that the defendant later claims creates an alternative means problem. See *Dern*, 303 Kan. at 398 (listing cases). Various Court of Appeals panels have reached inconsistent conclusions, as illustrated by the following two cases.

In *State v. Schreiner*, 46 Kan. App. 2d 778, 264 P.3d 1033 (2011), a defendant claimed the statute defining aggravated sodomy created alternative means of committing the offense, so he argued his conviction should be reversed because one of those means was not supported by sufficient evidence. The panel agreed the statute set out alternative

9

means but held the defendant could not challenge his conviction on that basis because he invited the error by requesting the instruction. 46 Kan. App. 2d at 789. It is important that the means the defendant argued was not supported by the evidence was submitted to the jury only because it was contained in defendant's requested instruction, and it expanded the offense's scope beyond what the State had charged in its amended information and on which the State had tried the case. 46 Kan. App. 2d at 787. Had the jury been instructed in a manner consistent with the amended information, there would have been no basis to assert an alternative means challenge. 46 Kan. App. 2d at 786-89; see also *Dern*, 303 Kan. at 397 (discussing *Schreiner*).

In contrast, the panel in *State v. Creason*, No. 105,450, 2012 WL 3289946, at *4 (Kan. App. 2012) (unpublished opinion), declined to apply invited error when the defendant argued there was insufficient evidence to support each alternative means of committing misdemeanor battery described in the instruction. In that case, defendant had proposed a nearly identical instruction to the one given at trial and failed to object at the instructions conference. The panel held the doctrine was not triggered because

> "[Defendant] is not complaining about error in the formulation of the battery instruction, which she submitted to the district court. She is claiming there was insufficient evidence to prove her guilt beyond a reasonable doubt of one alternative means of battery." 2012 WL 3289946, at *4.

In *Creason* the statute itself created the alternative means issue raised on appeal, and there was no suggestion the jury instruction proposed by the defendant expanded the crime beyond the scope of the charging document. 2012 WL 3289946, at *3.

As we did in *Dern*, in this case we can distinguish *Schreiner* on its facts without reaching the question of whether alternative means error can never be invited. In Sasser's case, the nature of the alternative means error, coupled with the circumstances, convinces

10

us Sasser did not invite the error he raises in this appeal. Sasser's counsel requested an instruction before trial that conformed to the way the State had charged the crime. This occurred before an alternative means error *could* be invited because the trial had not yet occurred. In other words, counsel could not appreciate before trial that the instruction would be overbroad—as measured by the State's evidence—until that evidence was submitted.

Like a lawyer who fails to request a lesser included offense instruction before trial, defense counsel who formulates pretrial proposed jury instructions based on the charging document will not know whether the State's evidence will justify the instructions. The opportunity to make that assessment will not present itself until the close of evidence. This is different than when a lawyer submits a pretrial instruction on the elements of an offense that defines the offense more expansively than it is charged by the State. See *Schreiner*, 46 Kan. App. 2d at 787 (requested instruction expanded scope of offense beyond what the State charged).

Admittedly, these issues may present close calls at times, especially because defense counsel has a professional obligation at the instructions conference to match the proposed instructions that are about to be given with the evidence presented at trial—just as Sasser's counsel did. But in terms of invited error, at the time Sasser requested the challenged instruction in advance of trial, he could not have known that the instruction would be erroneous at the close of evidence, especially because the instruction matched the State's allegations. Sasser's failure to object to the jury instructions finalized at the instructions conference more closely resembles acquiescence than invitation. We will not apply the invited error doctrine under these circumstances.

11

ALTERNATIVE MEANS

The next question is whether the jury instructions presented an alternative means issue requiring reversal of the burglary conviction. Recall that the instruction told the jury it could find Sasser guilty of burglary if Sasser entered the apartment "with the intent to commit first degree murder, aggravated assault or criminal threat, therein." Because we conclude there was sufficient evidence Sasser intended to commit each of these felonies, we need not decide whether this portion of the instruction actually set out alternative means of committing burglary.

We have previously explained that when a single offense may be committed in more than one way, the jury must be unanimous as to the defendant's guilt. But unanimity is not required as to any individual means so long as substantial evidence supports each means. *State v. Brown*, 295 Kan. 181, 188, 284 P.3d 977 (2012). Alternative means issues arise when the statute and any instructions that incorporate it list distinct alternatives for a material element of the crime. *State v. Williams*, 303 Kan. 750, 757, 368 P.3d 1065 (2016). "Consequently, determining whether a case involves alternative means is typically a matter of statutory construction, which is a question subject to unlimited review." 303 Kan. at 757.

As the State suggests, there are two ways Sasser's alternative means issue could fail. One is if the multiple object-felonies in the burglary instruction are not alternative means of committing the offense. The other is if sufficient evidence supported each alternative means, assuming for the sake of argument that each listed crime constituted a means. Because sufficient evidence showed Sasser's intent to commit each of the object-felonies in the apartment, we need not address whether his intent to commit these felonies constituted alternative means of committing burglary.

12

Sasser argues only that there was no evidence he intended to commit a criminal threat in the apartment. Criminal threat includes a threat to "[c]ommit violence communicated with intent to place another in fear . . . ." K.S.A. 2016 Supp. 21-5415(a)(1). But contrary to his contention, sufficient evidence revealed Sasser expressly communicated his intent to perform acts that would qualify as criminal threats in his text messages prior to arriving at his ex-wife's apartment. For example, he told his ex-wife, "Shortly you will be in pieces *begging for your life*." (Emphasis added.) Also, he told both her and Zuber that he would "see [them] soon" and "not be there to talk." He said he would "kill [his ex-wife] in front of God and everybody for bringing [Zuber] into [his daughter's] life." And after Zuber replied that Sasser had better "bring more than three guys this time," Sasser responded, "I have been waiting for this day *and you will for a short time beg me to stop*." (Emphasis added.)

A reasonable juror could conclude from these messages that Sasser intended to hold his ex-wife or Zuber under threat of violence for at least "a short time" and that he intended they would fear for their lives during that period. Accordingly, even if alternative means of committing aggravated burglary were submitted to the jury, there was sufficient evidence of each means.

LAY OPINION TESTIMONY

A lay witness may testify "in the form of opinions or inferences" so long as the opinions or inferences are rationally based on the witness' perceptions and helpful to a clearer understanding of the witness' testimony. K.S.A. 60-456(a). In contrast, an expert witness may offer opinions on matters within the expert's scope of special knowledge, skill, experience, or training. K.S.A. 60-456(b). In Sasser's case, a lay witness, Zuber, was permitted to tell the jury his estimate of the monetary value of the damages caused to the ex-wife's motorcycle. Sasser argues this lay opinion testimony was inadmissible and,

13

because it was the State's only evidence about the monetary value of the damages, his felony conviction for doing more than $1,000 worth of criminal damage to property must be reversed. We reject this claim.

*Additional Facts*

The motorcycle Sasser knocked over was a 2010 Kawasaki Ninja that his ex-wife purchased 6 to 18 months before the crime for $3,500 to $4,000. Photographs of the damages were shown to the jury during the testimony of an Overland Park police officer, but the photographs have not been included in the record on appeal.

Zuber testified he looked at the motorcycle after Sasser knocked it over and saw damages to its fairings, front and rear turn signals, and handlebar. He also testified that the police asked him for a damage estimate. He said he had owned five or six motorcycles during his "whole life" and had a "basis of knowledge . . . to provide" an estimate. He was, he said, "real knowledgeable when it comes to motorcycles and repairs"; he had several friends who owned motorcycle shops and rode sport bikes like the damaged motorcycle as well as Harleys.

The prosecutor then asked Zuber what he told the police about the amount of damage. Sasser's counsel objected: "[I]t's asking for an opinion." The trial judge responded that additional foundation was required, "particularly regarding this kind of motorcycle."

Zuber then testified that he was familiar with Kawasaki Ninjas because he had owned one for about 2 years, probably right before he began his relationship with Sasser's ex-wife 9 years earlier. Zuber said that the damaged Ninja was "a brand new bike" with only 300 miles on it. Sasser's ex-wife, he said, "had just purchased it."

14

The prosecutor again asked what Zuber had told the police about the amount of damage, and Sasser's counsel again objected. The court permitted the defense to question Zuber, who conceded he had never worked at a "bike" shop. He had, however, repaired his own "bikes." The exchange continued:

"Q.  So you are familiar with the costs that are needed to repair a bike?

"A.  Yes, I am. My brother used to be the finance manager at Freedom Cycle. Not only that, but I did take the bike also to go get an estimate on it, yes.

"Q.  Okay. But you didn't actually repair this bike?

"A.  No, I did not.

"Q.  Did you take off any of the outside material to see what damage was underneath it?

"A.  I could see what was wrong with it by looking at it. The handlebars were bent, the fairing was cracked, turn signals were busted off. Yeah, I could see the damage, and I know approximately what they cost, let alone—except for maybe the labor to repair them, yes.

"Q.  You are not familiar with the labor costs?

"A.  Well, labor costs, you know, different shops cost different things, depending on where you take it to. So, you know, anywhere between $50 an hour to $65 an hour, just depends on where you take it.

"Q.  Do you know how many hours it would take to fix the damage that was done to this bike that day?

"A.  Do I?

15

"Q. Yes.

"A. No, because I am not—I don't really work on Ninjas. So, no, I don't really know. But I do know what approximately the cost is to repair a fairing or replace a fairing, handlebars, and those kind of things, and that's what my estimate of what the cost would be, minus the labor."

After this testimony, defense counsel said, "Judge . . . I do think it's an opinion. He admitted that he doesn't repair these type of bikes, or familiar [*sic*] with the hours of labor that would be associated with that. I don't think that's sufficient." But the court ruled, "I think he's knowledgeable enough to give a lay opinion. It's not an expert opinion, but a lay opinion. I will allow it." Zuber then testified he told the police that he thought the value of the damage to the motorcycle was $1,000 to $1,500.

The Court of Appeals panel ruled that the district court was within its discretion to permit Zuber's damage value testimony. It reasoned, "Zuber's testimony was admitted as lay opinion testimony because Zuber knew 'approximately what [the repairs] cost[,]" and "Zuber's testimony about the extent of damage to the motorcycle and the approximate value of the damage was rationally based on his perception of what he saw when the police asked him to inspect [the ex-wife's] motorcycle. Zuber's testimony was also helpful in explaining the damage to [the] motorcycle." 2013 WL 5422322, at *3. It further reasoned, "[U]nder a plain-meaning reading of K.S.A. 60-456(a), Zuber's testimony was properly allowed." 2013 WL 5422322, at *3.

*Standard of Review*

Whether a witness, expert or layman, is qualified to testify as to his or her opinion is to be determined by the trial court in the exercise of its discretion. *Hawkinson v.*

16

*Bennett*, 265 Kan. 564, 592, 962 P.2d 445 (1998); see also *State v. Shadden*, 290 Kan. 803, Syl. ¶ 10, 235 P.3d 436 (2010) ("On appeal, a district court's application of K.S.A. 60-456 is reviewed under an abuse of discretion standard."). "A trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.'" *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015) (quoting *State v. Morrison*, 302 Kan. 804, 812, 359 P.3d 60 [2015]).

*Discussion*

"Criminal damage to property is by means other than by fire or explosive . . . [k]nowingly damaging, destroying, defacing or substantially impairing the use of any property in which another has an interest without the consent of such other person . . . ." K.S.A. 2011 Supp. 21-5813(a)(1). The crime's severity turns on the extent of damage to the property. Relevant to this case, "[c]riminal damage to property if the property . . . is damaged to the extent of at least $1,000 . . . is a severity level 9, nonperson felony . . . ." K.S.A. 2011 Supp. 21-5813(b)(2). If property "damaged is of the value of less than $1,000 or is the value of $1,000 or more and is damaged to the extent of less than $1,000," the crime "is a class B nonperson misdemeanor." K.S.A. 2011 Supp. 21-5813(b)(3).

In the context of criminal damage to a vehicle, we have held, "[F]or purposes of determining if the offense is a felony or misdemeanor, the value of the damage is the cost of replacement [parts] plus installation." *State v. Jones*, 247 Kan. 537, 540-41, 802 P.2d 533 (1990) (holding value of damages caused by breaking car windows was sum of cost of new window glass plus cost of installing it), *disapproved of on other grounds State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006). Moreover, for the statute's purposes, the value of damages to a vehicle cannot exceed the vehicle's total value. 247 Kan. at 542.

17

At the time of Sasser's trial, the relevant Kansas rules of evidence provided:

"If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." K.S.A. 60-456(a)-(b).

If the district court admits opinion testimony, it must be "deemed to have made the finding requisite to its admission." K.S.A. 60-456(c). Opinion testimony may embrace "the ultimate issue or issues to be decided by the trier of fact." K.S.A. 60-456(d). A recognized treatise in this area explains:

"[K.S.A. 60-456] recognizes that opinion testimony is the exceptional thing rather than the normal, and that there must be some necessity for it. On such questions as speed of a vehicle, intoxication, sanity, identity and the like, the witness is of necessity better able to draw a legitimate conclusion from what he or she has perceived than the jury could from a narration of the details, the details being of such character that people generally are capable of understanding them and of arriving at a conclusion with respect thereto.

. . . .

"Under [K.S.A. 60-456(a)] the qualification of lay witnesses is a matter for trial-court discretion in applying the standards outlined by the statute, and the discretion is not subject to review except in cases of abuse. The fact that the testimony may go to an

18

ultimate issue in the expression of opinion by the witness does not bar its admissibility if the testimony is helpful to the jury. The weight to be given it is for the jury, the same as with expert testimony." 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-456, p. 582 (5th ed. 2012).

In its commentary on a version of Rule 701 of the Federal Rules of Evidence that prescribed identical standards for the admission of lay opinion testimony, The New Wigmore, A Treatise on Evidence: Expert Evidence § 2.6, p. 84 (2d ed. 2011) states, "[T]he proper interpretation of Rule 701 and analogous state rules was that it did 'not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.'" Nonetheless,

"[s]ome courts held that under this rule 'a lay witness with first-hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion.' Under this interpretation, courts dodged restraints on expert opinions by calling them lay opinions . . . ." The New Wigmore § 2.6, p. 83.

It further describes the line dividing lay opinion and expert testimony as follows:

"[W]hile an expert relies on scientific, technical, or other specialized knowledge, lay testimony is based solely 'on the perception of the witness.' This means that opinion testimony should only be considered lay and not expert opinion if the average person, having been in the same position as the witness, could provide the testimony. Some courts adopt this standard but then apply it very liberally.

"[L]ay opinion testimony is limited to testimony based on the perception of fleeting events that does not require the witness to apply specialized knowledge. Application of specialized knowledge from whatever source would bring the testimony within the sphere of expertise." The New Wigmore § 2.6, p. 84-85.

19

Both the federal rules and K.S.A. 60-456 have been amended since Sasser's trial, apparently in an attempt to emphasize the boundary between the acceptable sources of knowledge to support the two types of opinion testimony and to bring the requirements for admission of expert opinion into line with the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

> "(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are rationally based on the perception of the witness; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) *are not based on scientific, technical or other specialized knowledge within the scope of subsection (b)*.

> "(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case." (Emphasis added.) K.S.A. 2015 Supp. 60-456.

According to The New Wigmore, a nearly identical provision in the current version of FRE 701 removing lay opinions based on specialized knowledge from the scope of admissible lay opinion testimony "now makes it clear that there is no overlap between Rules 701 and 702 [governing the admission of expert opinion testimony]." The New Wigmore § 2.6, p. 84.

We acknowledge that there should be identifiable lines between fact and opinion testimony and that opinion testimony probably should be more clearly divisible between

lay and expert. These categories are helpful because juries may be too easily swayed by the label of "expert," and district court judges need markers to police its boundaries and admissibility. In contrast, average jurors are better equipped to deal with fact and opinion testimony that proceeds more from common experience and sense and less from specialized education and training, the contours of which may at times run counter to human intuition.

In this case, most of Zuber's testimony was limited to facts—the history of his motorcycle ownership and familiarity with their repairs through personal experience or his associations with friends and his brother and their related employment. Two of his statements can be classified as his (probably unsurprisingly flattering) opinions of the depth and breadth of his motorcycle knowledge. Those statements are not challenged. Sasser takes issue only with the district judge's ruling to allow Zuber to recite the $1,000 to $1,500 value he gave police for the likely value of the damaged motorcycle's repairs. The judge regarded it as lay opinion testimony, a characterization we do not question today.

We detect no abuse of discretion in the district judge's ruling. Under the plain language of K.S.A. 60-456(a) then in effect, we agree with the Court of Appeals panel that "Zuber's testimony . . . was rationally based on his perception of what he saw when the police asked him to inspect [the] motorcycle. Zuber's testimony was also helpful in explaining the damage." 2013 WL 5422322, at *3. In short, Zuber's testimony was not based on information that was so scientific, technical, or specialized that it cried out for greater court control, even if we were to analyze this case under the revised statute. The district judge's ruling was not arbitrary, fanciful, or unreasonable; and it was not based on an error of law or of fact.

21

One further point on this issue bears mention. Sasser challenges the admission of Zuber's estimate because he sees it as a building block to reversal because it was the "only" evidence of felony-level damage. Even if we were to agree with him that Zuber's estimate should not have been admitted as lay testimony, reversal would not follow. The record reflects that the jury was also shown photographs of the damage to the motorcycle. Those photographs are not included in the record. If Sasser wanted to persuade us or the Court of Appeals that the photographs did not support the existence of damage worth $1,000 or more, he needed to ensure that they were included in the record on appeal. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

CONCLUSION

The judgment of the district court and the decision of the Court of Appeals are affirmed.

\* \* \*

BILES, J., concurring in part and dissenting in part: I agree with the outcome and rationale declining to apply the invited error doctrine and affirming the burglary conviction. I write separately to express my disagreement regarding opinion testimony that served as the sole basis for Sasser's felony conviction for criminal damage to property. I would hold this testimony was inadmissible.

Our caselaw applying K.S.A. 60-456 does not establish a clear division between lay and expert opinions. But we should all understand that lay opinion testimony is not based on specialized knowledge. Instead, its bedrock lies with the witness' position to observe the event or condition upon which the opinion is being expressed. See, *e.g.*, *State v. Shadden*, 290 Kan. 803, 819-25, 235 P.3d 436 (2010) (lay witness may express opinion

22

based on common knowledge about whether person is intoxicated); *State v. Hunt*, 285 Kan. 855, 864-66, 176 P.3d 183 (2008) (lay witness was allowed to characterize manner in which victim's body was packaged in tarp tied with rope and secured with tape as "'overdone'" and to testify about what that meant); *State v. Kendall*, 274 Kan. 1003, 1013, 58 P.3d 660 (2002) (police officer's opinion on defendant's intoxication admissible as lay or expert testimony); *State v. Craig*, 215 Kan. 381, 383, 524 P.2d 679 (1974) (witness observing defendant's activities in connection with an establishment could testify defendant "manage[d]" that establishment); *State v. Randol*, 212 Kan. 461, 468, 513 P.2d 248 (1973) (lay witness with special opportunity to observe defendant near time of crime could testify to opinion about defendant's sanity at the time of a crime); *Stafford v. Karmann*, 2 Kan. App. 2d 248, Syl. ¶ 1, 577 P.2d 836 (1978) (lay opinion on speed of vehicle admissible).

Our court's statements on lay and expert opinion testimony regarding intoxication, which can fall into either category, recognize that lay opinion testimony must not be based on specialized knowledge. See *Shadden*, 290 Kan. at 820 ("The common component of lay and expert opinions regarding impairment or intoxication is the *common knowledge* that excessive alcohol consumption can cause problems with coordination, balance, and mental acuity." [Emphasis added.]). Similarly, we have permitted a police officer to testify that marks on a person's arm were "needle marks" and "fresh tracks," despite a lack of medical training, because whether a wound was caused by a puncture and whether a wound is old or new did not appear "highly technical" and because the officer nevertheless "had some experience and training in the area about which he was testifying." *State v. Loudermilk*, 221 Kan. 157, 163, 557 P.2d 1229 (1976) ("Here the witness testified to what he observed and little more."). And we have approved the refusal to admit a lay witness' opinion that would have amounted to an opinion on the law applicable to the witness' conduct. See *Osborn v. Lesser*, 201 Kan. 45, 47-48, 439 P.2d 395 (1968) (citing trial court's discretion in admitting opinion evidence and holding

no error excluding lay witness testimony about what constituted a "proper" turn at a Y-intersection, which would be an expression of opinion as to the law applicable to the turn), *overruled on other grounds State v. McCullough*, 293 Kan. 970, 270 P.3d 1142 (2012).

The distinction between lay and expert opinion testimony in my view compels the conclusion that a forecast of future repair costs is not an opinion "rationally based on the perception of the witness," as required to make it admissible as lay opinion testimony under K.S.A. 60-456(a). Rather, it is based on specialized knowledge and, therefore, is impermissible as lay opinion testimony. See *Pendarvis v. American Bankers Ins. Co. of Florida*, 354 Fed. Appx. 866, 867 n.3 (5th Cir. 2009) (unpublished opinion) (noting "lay testimony regarding repair costs for repairs already performed" is different from testimony "[p]redicting future repair costs"; the former requires the witness "to do little more than read an invoice," whereas the latter demands a "specialized knowledge"); *Paschal v. Engle*, No. 03-16-00043-CV, 2016 WL 4506298 (Tex. App. 2016) (unpublished opinion) (noting in suit for damages to real and personal property, "[t]he necessity and reasonableness of repair costs are issues that require specialized or technical knowledge falling within the exclusive domain of an expert"); *cf. Jim Ellis Atlanta, Inc. v. McAlister*, 198 Ga. App. 94, 97, 400 S.E.2d 389 (1990) (holding testimony of individual who had prior experience as automotive technician and experience repairing vehicles could testify as expert on cost of repairing vehicle).

Put simply, the knowledge required to form such an opinion is outside the common experience of laypersons—as compared, for example, to a lay witness' estimate of how fast a vehicle was travelling or whether an individual appeared to be intoxicated. The question before us is not whether Zuber could give his opinion on whether parts of the motorcycle were "bent," "crushed," or "scratched"—or even "badly" or "slightly" so—nor is it whether the damage appeared to be new or old. *Cf. Loudermilk*, 221 Kan. at

163 (lay witness permitted to characterize wounds on arms). The question is whether Zuber could tell the jury, as a lay witness, how much it would cost to repair these damages.

When one sets aside his purported specialized knowledge of motorcycles and motorcycle repair, it becomes clear his testimony on this point was admissible, if at all, only as an expert opinion. Zuber was not in a better position as to the *value* of the damages "to draw a legitimate conclusion from what he . . . *perceived* than the jury could from a narration of the details, the details being of such character that people generally are capable of understanding them and of arriving at a conclusion with respect thereto." 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-456, p. 582 (5th ed. 2012).

The problem, of course, is that no person—witness or juror—without specialized knowledge of motorcycle repair could conclude from the details, *i.e.*, a visual depiction of the damages, that the value of those damages exceeded $1,000. *Cf. State v. Jones*, 247 Kan. 537, 541, 802 P.2d 533 (1990) (reversing felony criminal damage to property conviction based on damage to automobile because State failed to put on evidence that 11-year-old car's value exceeded then-$150 threshold for felony, rather than misdemeanor conviction). The State's persistent effort to put into evidence Zuber's personal experience with riding motorcycles and his brother's employment as a finance manager at a motorcycle shop underscore that the State was trying to give his testimony specialized heft. If the State believed this crime was a felony, instead of relying on Zuber's opinion, it should have to prove the motorcycle damage exceeded the $1,000 threshold and better develop this crucial evidentiary requirement.

I would hold the trial court abused its discretion by admitting Zuber's testimony based on a mistaken view of K.S.A. 60-456(a). And, because the remaining evidence

25

does not support the jury's verdict that the damages to the motorcycle exceeded $1,000, the felony criminal damage conviction should be reversed and the case remanded as to that count.

ROSEN and JOHNSON, JJ., join in the foregoing concurring and dissenting opinion.